[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff and her ex-husband, Vincent Catania, purchased a house at 6 Howard Street, Enfield, Connecticut on or about June 24, 1976. The property was acquired in the name of the plaintiff's ex-mother-in-law. The bulk of the purchase price was financed by the mother-in-law through a first mortgage with Enfield Savings and Loan Association in the original amount of $26,860. This was done because the plaintiff and her ex-husband were unable to obtain a mortgage for the purchase of the property. The premises were occupied by the plaintiff, her ex-husband and their children. The plaintiff and her ex-husband paid the mortgage, taxes and other expenses associated with the property. On or about January 17, 1977, the ex-mother-in-law conveyed the property to the defendant, Joseph Catania, who is the brother of Vincent, the ex-husband. The transfer was made without consideration and without the knowledge or consent of the defendant. He did not become aware that he was record owner until subsequent to 1980.
The plaintiff and Vincent were divorced in June of 1980. The divorce decree provided that said ex-husband was to have the title to the premises conveyed to the plaintiff as trustee for their minor children with title to become absolute in the name of the plaintiff when the youngest child reached the age of eighteen. The decree also provided that the ex-husband should pay the mortgage payments, the homeowner's insurance and real estate taxes on the property until such time as the youngest child reached eighteen. This divorce decree also provided that if the plaintiff were to vacate the premises CT Page 280 prior to the time that both of the children reached the age of eighteen the property was to be sold and the proceeds divided equally between the plaintiff and her ex-husband. The judgment was never recorded on the land records nor was title to the property transferred on the land records nor was title to the property transferred to the plaintiff or trustee.
Approximately one month after the divorce, on or about July 30, 1980, the plaintiff's ex-husband moved back into the premises at 6 Howard Street where he continued to reside with his former wife until 1986.
The plaintiff's ex-husband caused a second mortgage to be taken on 6 Howard Street on two separate occasions. The first time was on or about September 2, 1982 in the principal amount of $17,000. The defendant, having title to the property, signed a loan guarantee agreement in order to provide security for his brother's loan. His loan guarantee agreement contained a reservation of rights clause. The defendant received no benefit from this loan. Checks made out to him were endorsed to his brother Vincent. Proceeds of this loan went for property taxes and to pay a number of pre-existing loans of the plaintiff's ex-husband at the New England Bank and Trust Company.
On or about December 14, 1983, the defendant and his brother Vincent executed a promissory note in favor of the New England Bank and Trust Company in the principal amount of $20,400 and it is this note which forms the basis of this dispute. This note was secured by a mortgage on the property at 6 Howard Street which was duly recorded. This note was signed by Vincent and Joseph Catania on a line labeled "borrower's signature." The defendant executed a mortgage deed in favor of the New England Bank and Trust to secure said loan. The note enabled the plaintiff's ex-husband to refinance the 1982 indebtedness owed to New England Bank and Trust Company at a lower interest rate. The defendant received no benefit from this loan. The money went to pay real estate taxes for the property at 6 Howard Street and went to satisfy the ex-husband's obligation on the 1982 indebtedness.
The ex-husband continued to pay the mortgage and taxes on 6 Howard Street. The defendant was not aware of the terms of the divorce decree at the time that he signed each of the loans.
Some time in 1986 but prior to August 8, 1986, the ex-husband Vincent vacated the premises at 6 Howard Street. On or about August 8, 1986, the plaintiff brought an action to quiet title to the said premises. The named defendants in the CT Page 281 action were the defendant and the plaintiff's ex-husband. Neither the ex-husband nor the defendant entered an appearance in that case. The plaintiff obtained a judgment on August 24, 1987 that quieted title in her name. This judgment paralleled the terms of the divorce decree and held that the plaintiff owned 6 Howard Street as trustee for her two children until they both reach the age of majority. Subsequently, title was to vest absolutely in the plaintiff. As of the judgment date, the plaintiff's son James had reached the age of majority. Also during 1986, the plaintiff vacated the premises at 6 Howard Street not returning until 1990. During the period when she had abandoned the property it was used as a residence by her adult son and his girlfriend. During her absence from the premises the plaintiff never attempted to sell 6 Howard Street and divide the proceeds with her ex-husband in accordance with the terms of the divorce decree; nor was the remedy sought by the ex-husband. In late 1988, and early 1989, the ex-husband stopped making the mortgage payments on both the first and second mortgages on the real estate. Plaintiff filed several contempt motions against her ex-husband in an attempt to force him to make these payments.
In May of 1989, the New England Bank and Trust Company brought an action to foreclose the note and mortgage. The defendant, his brother Vincent, the plaintiff and her minor children were all named defendants. On May 24, 1989, the plaintiff paid the bank the sum of $15,871.18 in exchange for an assignment of the promissory note. She borrowed this money from her mother and executed a note in favor of her mother in order to do so.
On May 19, 1989, the defendant's ex-husband filed for bankruptcy under the Federal Bankruptcy Code. On September 26, 1989 he was granted a discharge by the Bankruptcy Court which discharged the debt in favor of the New England Bank and Trust Company. The plaintiff was aware of the bankruptcy proceedings and had unsuccessfully opposed her ex-husband's attempt to discharge the debt to the bank.
On March 6, 1990 in connection with the prosecution of the contempt motions, the plaintiff and her ex-husband entered into a stipulation which modified the original divorce decree. The parties stipulated to certain arrearages for attorney's fees; the balance owed on the note in favor of the plaintiff's mother which was executed in order to pay off the second mortgage; the balance owed on a note in favor of the plaintiff's mother which was executed in order to borrow funds to pay off the first mortgage on the property at 6 Howard Street (the first mortgage holder had also begun a foreclosure action); real estate taxes in a substantial sum and an CT Page 282 unspecified amount of an arrearage for the unpaid medical bills incurred for the minor daughter. Although the New England Bank and Trust Company debt had been discharged in bankruptcy the ex-husband still had an obligation under the divorce decree to make the mortgage, tax and insurance payments regarding 6 Howard Street. The agreement entered into required that the defendant pay the sum of $50 per week to the plaintiff with $10 allotted for child support and $40 for the arrearages.
The plaintiff maintains that the promissory note executed to pay off the second mortgage was validly negotiated to the plaintiff who is a holder of the note; that the defendant as a maker of the note owes the plaintiff the value of said note; and that he has not been discharged as to that note.
The defendant has filed special defenses maintaining that he is an accommodation party as to the note and has been discharged from payment thereon because the plaintiff (a) altered the terms of payment of the note without his consent, and (b) impaired the collateral securing the underlying indebtedness. The defendant also asserts several additional defenses which highlight his claim to be an accommodation party. The defenses are (1) he was merely acting as a trustee; (2) he received no benefit from the note; and (3) the plaintiff and her ex-husband received the benefit of all the proceeds of the note.
In response to the defendant's special defenses, the plaintiff maintains that the defendant was not an accommodation party; that he was a maker of the note and therefore cannot use any of the discharge provisions provided in C.G.S. Section 42a-3-606 or was an accommodation maker who cannot use the discharge provisions because the face of the promissory note itself fails to inform anyone of the accommodation status of the defendant and the plaintiff did not have any knowledge of the defendant's status as an accommodation party. The plaintiff further argues that even if the court found that the defendant was an accommodation party and the plaintiff had knowledge of this fact, there in fact has been no alteration of the note or impairment of the collateral. Therefore the defendant would not be discharged of his obligation to pay the plaintiff.
In her complaint, the plaintiff makes no claim to being a holder in due course and the court so finds. The plaintiff was fully aware that the note was overdue, had been dishonored and that there were defenses against said note. Thus, in accordance with C.G.S. Section 42a-3-302 (1)(c), she could not qualify as a holder in due course. CT Page 283
In accordance with C.G.S. Section 42a-3-306 (b) as a holder, the plaintiff took the instrument subject to all defenses of any party which would be available in an action on a simple contract and also the special defenses of C.G.S. Section 42a-3-606.
It is the opinion of this court that the defendant was a co-maker of the note. The defendant signed on a line labeled "borrower's signature" and this term appears on two other lines beneath the first: one labeled "borrower's name" and the third "borrower's address." Paragraph 9 of this note stated "I know that each person signing this note is equally and separately responsible for making the payments and keeping the promises." Paragraph 6 provides that the payee can make the signer pay the entire unpaid amount of the note. Paragraph 5 of this note states "As collateral for this note, I give you security interest in the following real property of mine. 6 Howard Street, Enfield, CT." Title to such property was in Joseph Catania at the time of the signing of this note. Although the proceeds of the 1983 note were used primarily to pay off Vincent's indebtedness under the 1982 note, it is noteworthy that the 1983 note is not merely a continuation of the 1982 transaction. In the 1982 transaction the note was signed by Vincent only. Joseph signed a separate and distinct document clearly labeled as a guarantee agreement. In signing a clearly labeled installment loan note and the separate mortgage deed as security in December of 1983, the defendant should have known that he was engaged in a completely different transaction with entirely different legal consequences.
It is true, that as against a "holder" as distinct from a "holder in due course" one can show that he is an accommodation party by parol evidence. However, the burden is upon the defendant who makes such a claim to show by a fair preponderance of the evidence that he did sign in such a capacity. Further, the burden is upon the defendant to show that the plaintiff had knowledge of this fact. Southland Corp. v. Vernon, 1 Conn. App. 439, 443 (1984). The only evidence introduced by the defendant to show that he was an accommodation party pointed to the fact that he signed both the guarantee agreement and the note in question to accommodate his brother Vincent. It is uncontroverted that he held the property as a trustee for his brother. However, no facts were introduced to show that the New England Bank and Trust Company knew or accepted him as an accommodation party. It is clear that Vincent had no credit. As maker of the promissory note, the defendant is liable for payment of the amount due on the note. C.G.S. Section 42a-3-413. The defendant is not entitled to the discharges provided for in C.G.S. Section 42a-3-606. Federal Land Bank of St. Louis v. McGinnis, 711, F. Supp. 952, CT Page 284 955 (1989); Great Southwest Life Insurance Co. v. Fraser,860 F.2d 896, 900 (1988), U.S. v. Unum, Inc. 658 F.2d 300
(1981); Official Comment to Conn. C.G.S. Section 42a-3-606.
The plaintiff was assigned this note for consideration paid to the New England Bank and Trust Company for the purpose of saving the property from foreclosure since although she had title to same under the action to quiet title, said title was subject to both the first and second mortgages. Whether or not the plaintiff knew of the trustee status of the defendant or knew the reason why the defendant signed the note to the New England Bank and Trust and why he granted a mortgage on the property, it did not change the status of the defendant. The defendant's status as a co-maker has not changed because of the transfer of the note to the plaintiff.
Judgment may enter for the plaintiff in the amount of $18,629.98 plus interest thereon at the rate of $5.00 per day from September 20, 1990 until the date of this judgment. Judgment may also enter for costs in the amount of $379.00 and for a reasonable attorney's fee in the amount of $3,000.
ROBERT J. HALE, Judge